UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                           Case No. 8:04-bk-06835-KRM

MICHAEL L. McCLUNG,                              Chapter 7

        Debtor.
_____/

**MEMORANDUM OPINION ON DEBTOR'S MOTION
FOR SUMMARY JUDGMENT WITH RESPECT TO
OBJECTION TO CLAIM OF EXEMPTIONS (HOMESTEAD)**

        The largest creditor in this Chapter 7 case, New Buffalo Savings Bank ("NBSB"), objected to the debtor's claim of exemption to his homestead, a home worth an estimated $1.2 million in Sarasota, Florida (the "Homestead"). The objection asserts that $50,000 of funds obtained by the debtor's fraud were used to acquire, renovate or repair the Homestead (Document No. 83). To that extent, NBSB argues, an equitable lien should be imposed on the Homestead in the bank's favor. For the reasons set forth herein, the Court will grant the debtor's motion for summary judgment (Document No. 283) and allow the homestead exemption in full.

BACKGROUND

        The relevant facts are not disputed. In September 2000 and March 2001, NBSB made loans to the debtor in the aggregate amount of about $1.1 million. Even though these loans were to be used to purchase two boats, the debtor and NBSB agreed that the loans were to be secured by a pledge of the debtor's interest in an investment account in the C. Blair Partnership (the "C. Blair Fund"). NBSB's interest in the debtor's

partnership account was documented by a Consent Agreement among the debtor, NBSB, and the C. Blair Fund. No UCC filing was ever made with respect to NBSB's security interest.

At various times in 2002, the funds in the C. Blair Fund were distributed to the debtor or the debtor's wife, without the knowledge or consent of NBSB. NBSB's later discovery of the total depletion of C. Blair Fund, the collateral for the "boat loans," eventually led to litigation in state court.[1] In turn, the debtor filed an "individual" Chapter 11 case on April 7, 2004. The case was converted to Chapter 7 on April 7, 2005, after the debtor failed to achieve confirmation of his Chapter 11 plan.

The debtor's homestead in Florida dates back to 1999, when the Debtor and his non-debtor spouse, Julia McClung, purchased a home in Sarasota, Florida (the "First Residence") for $665,000. On March 25, 2002, the McClungs purchased their current home in Sarasota (the "Homestead") for $975,000, plus settlement costs for a total of $989,796. NBSB provided the McClungs with a $900,000 line of credit, essentially a bridge loan, until the First Residence was sold. The McClungs provided an earnest money deposit of $90,000, of which $5,000 came from Mrs. McClung's savings account and $85,000 came from their account at NBSB.

The First Residence was later sold and the McClungs refinanced the bridge loan by borrowing $740,000 from another bank. These monies were used, with a

---

[1] NBSB declared a default in May 2003 and later commenced suit in Michigan. Later, NBSB brought suit against the debtor and his wife in the Circuit Court in Sarasota.

2

portion of the proceeds from the sale of the First Residence, to pay the NBSB bridge loan in full.

On May 26, 2005, the debtor filed his Motion for Summary Judgment, together with his supporting affidavit, asserting that no funds obtained from C. Blair Fund were used to purchase the Homestead. Then, on the eve of the hearing on the debtor's motion for summary judgment, NBSB filed a deposition of Julia McClung, taken on March 26, 2004, in the earlier state court action between NBSB and the debtor. NBSB then argued that the debtor used $50,000 from the C. Blair Fund for repairs to the Homestead.[2]

Mrs. McClung's deposition testimony is inconclusive. On the one hand, she states that in May 2002 the debtor gave her $50,000 to make repairs on the Homestead; but she also testified that she did not know the source of the funds (Document No. 271, at pp. 55-56).

At most, NBSB held only an unperfected security interest in the C. Blair Fund at the times of the alleged withdrawals in 2002. NBSB's security interest was based upon the Consent Agreement signed by the debtor and C. Blair Fund, agreeing to deposit any withdrawals from the C. Blair Fund in an account with NBSB. It is not disputed that the debtor and C. Blair Fund did not comply with the Consent Agreement, but it is also undisputed that, as of the time of the alleged repairs, the debtor had made the

---

[2] Initially, NBSB objected to the debtor's claim of exemption on the Homestead "to the extent that there was fraud in the acquisition of the homestead. Specifically, to the extent that proceeds from the C. Blair Fund, which was pledged to secure the debtor's obligations to NBSB, funded the acquisition of the debtor's homestead, the homestead is not exempt and is subject to an equitable lien."

required loan payments due to NBSB, and had made a large, unscheduled principal reduction.

NBSB initially filed an unsecured proof of claim in the Chapter 11 case (Claim No. 2) in the amount of $753,250.80. The debtor objected to the claim[3] and sought to prevent NBSB's from voting its disputed claim. Ultimately, NBSB and the debtor agreed to a settlement: the Court entered an "Agreed Order Allowing the Claim of New Buffalo Savings Bank" (Document No. 226) (the "Agreed Order") on February 18, 2005, allowing NBSB agreed an *unsecured* claim in the amount of $617,485.85 "for all purposes."

Based on the record and the presentation of counsel, the Court finds it appropriate to grant summary judgment in favor of the debtor, overrule the Bank's objection, and allow the debtor's claim of exemption in full.

DISCUSSION

The party opposing the homestead exemption bears the burden of proving that the exemption is not properly claimed. Fed. R. Bankr. P. 4003(c). The Florida Constitution, Art. X, Section 4(a)(1), grants debtors a liberal exemption for homestead property and a presumption arises in favor of the exemption. In re Colwell, 196 F.3d 1225, 1226 (11th Cir. 1999). Exceptions to the homestead exemption should be strictly construed in favor of claimants and against challengers. In re Ehnle, 124 B.R. 361, 363 (Bankr. M.D. Fla. 1991).

---

[3] The objection was set forth in a counterclaim in Adversary Proceeding No. 04-412.


In <u>Havoco of American, Ltd. v. Hill</u>, 790 So.2d 1018, 1020 (Fla. 2001), the Florida Supreme Court ruled that a homestead was exempt property where "the debtor acquired the homestead using non-exempt funds with the specific intent of hindering, delaying or defrauding creditors." <u>Id.</u> at 1019. Notwithstanding this holding, the Court recognized that an equitable lien may be imposed on the exempt homestead to protect a creditor if the debtor has stolen, fraudulently obtained or embezzled money from the creditor and then used the funds to buy the homestead.

This remedy has been narrowly construed and a high standard must be met to impose an equitable lien. <u>In re Abrass</u>, 268 B.R. 665, 683-84 (Bankr. M.D. Fla. 2001). Cases interpreting <u>Havoco</u> have confirmed that the essence of the equitable lien remedy is the misappropriation of funds by means of fraud or egregious conduct. <u>Id.</u> at 685 (imposing an equitable lien where "[b]ut for the [d]ebtor's fraud and theft," she would not have been able to buy her homestead); <u>In re Thiel</u>, 275 B.R. 633 (Bankr. M.D. Fla. 2001)(imposing an equitable lien where debtor essentially stole the proceeds of two certificates of deposit owned by the plaintiff); <u>In re Maurer</u>, 267 B.R. 639 (Bankr. M.D. Fla. 2001)(imposing an equitable lien where a trustee misappropriated insurance proceeds that were to go to the beneficiary of the trust—the debtor's nephew). A fraudulent asset conversion does not give rise to an equitable lien. <u>In re Adell</u>, 321 B.R. 573 (Bankr. M.D. Fla. 2005).

NBSB cannot meet the "high standard" necessary to establish an equitable lien. Even if NBSB could prove that the $50,000 came from the C. Blair Fund (which NBSB can only infer from the record), it is undisputed that those funds belonged to the

debtor. At best, NBSB can only establish that the debtor used his own money, albeit in violation of the parties' Consent Agreement, to repair the Homestead. Even if the debtor breached the Consent Agreement, by withdrawing the funds, that does not come within the exceptional circumstances required to impose an equitable lien on the constitutionally protected homestead.[4]

Accordingly, the Court determines that the debtor properly claimed an exemption for the Homestead and that NBSB is not entitled, as a matter of law, to an equitable lien. A separate order will be entered in accordance with this opinion.

**DONE AND ORDERED** in Tampa, Florida on July 6, 2005.

K. RODNEY MAY
United States Bankruptcy Judge

Copies to:
Roberta A. Colton, Esquire, Trenam, Kemker, et al., P. O. Box 1102, Tampa, FL 33601
Michael P. Brundage, Esquire, Hill, Ward, et al., P. O. Box 2231, Tampa, FL 33601
Robert A. Soriano, Esquire, Carlton, Fields, et al., Corporate Center Three at International Plaza, 4221 West Boy Scout Boulevard, Tampa, FL 33607-5729
United States Trustee, 501 East Polk Street, Suite 1200, Tampa, FL 33602
Michael L. McClung, 1023 TocoBaga Lane, Sarasota, FL 34236
Traci Stevenson, Chapter 7 Trustee, P. O. Box 86690, Madeira Beach, Florida 33738-6690

---

[4] In view of the Court's ruling on the equitable lien, it is unnecessary to address the judicial estoppel argument of the debtor. Nevertheless, the Court is of the view that the Agreed Order allowing NBSB's claim as an unsecured claim should have precluded the assertion of a secured claim as a result of an equitable lien.

8-04-6835-KRM-Order Granting Motion for Summary Judgment re:
Objection to Claim of Exemptions (Homestead)- 1254655v1